UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Ingrid Maltez,

       *Plaintiff*,


    v.


New Jersey Transit Rail
Operations, Inc.,

       *Defendant*.

Civil Action No. 21-13938
(MEF)(AME)


**OPINION and ORDER**

\*    \*    \*

For the purposes of this brief Opinion and Order, the Court assumes full familiarity with the allegations and procedural history of this case.

\*    \*    \*

The Plaintiff, a railroad worker, sued her employer, a railroad.[1]

The Plaintiff's complaint is in two counts.  The first concerns an alleged April 2019 injury, see Complaint at ¶¶ 10-17, and the second focuses on another injury, a month later.  See id. at ¶¶ 27-36.

Each count presses a claim under the Federal Employers' Liability Act ("FELA"), and each FELA claim is based in part on an alleged violation of the Federal Safety Appliances Act ("FSAA").  See id. at ¶¶ 3, 20.

The Plaintiff now moves for partial summary judgment on each count, see Motion for Partial Summary Judgment at 13-14, and the parties' briefing became fully submitted around four weeks ago.

---

[1]  The Plaintiff is Ingrid Maltez.  The Defendant is New Jersey Transit Rail Operations, Inc.

The motion is denied as to Count One, and granted as to Count Two.

\*       \*       \*

Start with some background on the FSAA.

The FSAA requires a "railroad carrier" to use only "vehicles" equipped with "efficient hand brakes."  49 U.S.C. § 20302(a)(1)(B); see generally Meyers v. Reading Co., 331 U.S. 477, 482-83 (1947).

An "efficient" handbrake is generally said to be one that is "adequate in performance; producing properly a desired effect." Meyers, 331 U.S. at 482-83; see also Barbay v. Union Pac. R.R. Co., 2019 WL 639011, at \*3 (M.D. La. Feb. 14, 2019); Gilreath v. CSX Transp., Inc., 2018 WL 737607, at \*4 (E.D. Ky. Feb. 6, 2018); Keane v. Ne. Ill. Commuter R.R. Corp., 2002 WL 1806919, at \*2 (N.D. Ill. Aug. 6, 2002).

A plaintiff can establish that a handbrake was "inefficient[]" by showing "the brake was used in the normal and usual manner and failed to work."  Meyers, 331 U.S. at 483; see also Gilreath, 2018 WL 737607, at \*4.

Two further points about the statute.

First, the FSAA does not supply a cause of action.  Rather, an injured employee who seeks to recover based on an alleged FSAA violation may sue under the FELA.[2]

---

[2]  See Crane v. Cedar Rapids & Iowa City Ry. Co., 395 U.S. 164, 166 (1969) ("The [FSAA] did not create a federal cause of action for either employees or nonemployees seeking damages for injuries resulting from a railroad's violation of the Act. . . . Congress did, however, subsequently provide a cause of action for employees: The cause of action created by the Federal Employers' Liability Act . . . embraces claims of an employee based on violations of the [FSAA]"); Beissel v. Pittsburgh & Lake Erie R.R. Co., 801 F.2d 143, 145 (3d Cir. 1986) ("An employee who is injured by reason of a violation of the [FSAA] may pursue a cause of action against the carrier pursuant to the FELA"); accord, e.g., Onysko v. Delaware & Hudson Ry. Co., Inc., 2017 WL 372235, at \*4 (M.D. Pa. Jan. 26, 2017); Finley v. Nat'l R.R. Passenger Corp., 1997 WL 59322, at \*5 (E.D. Pa. Feb. 12, 1997).

And <u>second</u>, an underlying violation of the FSAA does not always add up to FELA liability.  For example, the FSAA might have been violated --- but if the violation did not cause the plaintiff's injury, then the plaintiff will not be able to recover under the FELA.  <u>See</u> <u>Meyers</u>, 331 U.S. at 482-83 ("A railroad subject to the [FSAA] may be found liable if the jury reasonably can infer from the evidence . . . that the hand brake <u>which caused</u> the injuries was on a car which the railroad was then using on its line, in interstate commerce, and that the brake was not an 'efficient' hand brake.") (emphasis added); <u>Crane</u>, 395 U.S. at 166 (to succeed on an FELA claim premised on an FSAA violation, the plaintiff must demonstrate a "statutory violation" and that their "injury resulted 'in whole or in part' from the railroad's violation of the Act"); <u>Onysko</u>, 2017 WL 372235, at *4 ("a railroad is liable for an employee's injury . . . <u>caused</u> by a violation of the FSAA") (cleaned up) (emphasis added).

Here, the Plaintiff moves for partial summary judgement as to Count One and Count Two --- but only as to the Defendant's FSAA violation, not as to causation or the Defendant's ultimate liability under the FELA.  <u>See</u> Motion for Partial Summary Judgment at 10-13.[3]

---

[3]  Seeking summary judgement in this limited way --- as to a step along the way to liability, but not as to liability itself --- has long been thought improper.  <u>See</u> <u>Coffman</u> v. <u>Federal Lab'ys</u>, 171 F.2d 94, 98 (3d Cir. 1948); <u>accord</u>, <u>e.g.</u>, <u>New Jersey</u> v. <u>Haig's Serv. Corp.</u>, 2016 WL 4472952, at *4 n.1 (D.N.J. Aug. 24, 2016) ("a court may not allow partial summary judgment on only one portion of a claim") (cleaned up); <u>Avaya, Inc.</u> v. <u>Telecom Labs, Inc.</u>, 2009 WL 2928929, at *2 (D.N.J. Sept. 9, 2009) ("the validity of a motion seeking judgment of some non-liability element of a claim that would not resolve at least one entire claim is questionable in federal courts . . . . Summary judgment may not be granted on a portion of liability, or on a single issue."); <u>In re G-I Holdings Inc.</u>, 2007 WL 1412294, at *4 (D.N.J. May 14, 2007) ("Given that the present motion asks not for a ruling disposing of any claim or cause of action, but instead for an adjudication of an issue that is only a small subset of the ultimate question to be decided in this adversary proceeding, it simply doesn't appear that resolution of the present motion would materially advance the litigation in any way."); <u>N.J. Auto. Ins. Plan</u> v. <u>Sciarra</u>, 103 F. Supp. 2d 388, 396 (D.N.J. 1998) ("Nothing in this rule can be read to allow partial summary judgment on only one portion of a claim . . .

*     *     *

As to the alleged April 2019 accident that is the basis for
Count One, the Plaintiff's core evidence is her deposition
testimony, plus an injury report she filled out.  See Motion for
Partial Summary Judgement at 4; Plaintiff's Statement of
Material Facts ¶¶ 1-15 (citing Exhibit A and Exhibit B).

While questioning the Plaintiff during her deposition, the
Defendant pressed various challenges to her credibility.  For
example, the Defendant asked the Plaintiff if she had
contemporaneously told anyone about the alleged handbrake
malfunction, including the work crew that was slated to take
over when her shift was done.  See Motion for Partial Summary
Judgment, Exhibit A, Deposition of Ingrid Maltez at 37:22-38:11.[4]

These lines of questioning took aim at the credibility of the
Plaintiff --- including her testimony as the whether the

_____

summary judgment may be had as to one claim among many, but it
is well settled that neither subsection allows such a judgment
as to one portion of a claim.") (cleaned up); Kendall McGraw
Lab'ys, Inc. v. Cmty. Mem'l Hosp., 125 F.R.D. 420, 421(D.N.J.
1989) ("Summary judgment may be had as to one claim among many,
but it is well settled that neither subsection allows such a
judgment as to one portion a claim."); Westinghouse Elec. Corp.
v. Fidelity & Deposit Co. of Md., 63 B.R. 18, 22 (E.D. Pa. 1986)
("Partial summary judgment may not be invoked to dispose of only
part of a single claim."); cf. RePass v. Vreeland, 357 F.2d 801,
805 (3d Cir. 1966).  But Rule 56, the summary judgment rule, was
amended in 2010, and in light of that amendment, partial summary
judgment as to an element of liability may now be permitted.
See Hudak v. Clark, 2018 WL 1785865, at *3 (M.D. Pa. Apr. 13,
2018); In re SemCrude, L.P., 2012 WL 694505, at *3 (D. Del.
Bankr. Mar. 1, 2012).  The Court notes this issue, but does not
address it here.  The issue is not raised by the parties.  See
generally Wu v. GSX Techedu Inc., 2024 WL 3163219, at *25
(D.N.J. June 25, 2024) (discussing the party presentation rule);
Church v. Collection Bureau of Hudson Valley, Inc., 2023 WL
8185669, at *8 n.15 (D.N.J. Nov. 27, 2023) (same).

[4]  For another example, see 42:19-43:9 of the deposition
transcript, where the Defendant posed questions to the Plaintiff
as to her testimony that she had no back problems before the
accident --- and then referred to a note in the Plaintiff's
medical record about pre-accident back issues.

handbrake had malfunctioned at all.  See Memorandum of Law in Opposition at 6.

The Plaintiff was the critical witness to the April 2019 accident.  (Indeed, it appears she was the only witness.  See Plaintiff's Statement of Material Facts ¶¶ 1-15.)

But whether a key witness is or is not credible on a central issue is a decision for the jury.  See United States v. Rawlinson, 433 F. App'x 99, 102 (3d Cir. 2011); United States v. Jones, 566 F.3d 353, 361 (3d Cir. 2009); Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 299 (3d Cir. 1991); accord, e.g., Wilson v. Wexford Health Sources, Inc., 932 F.3d 513, 521 (7th Cir. 2019).

That decision cannot be taken away from the jury, by the Court granting summary judgment.  See, e.g., Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash. D.C. v. Rustam Guiv Found. of N.Y., 822 F.3d 739, 751 (4th Cir. 2016) ("[w]here the determination of what actually happened depends on an assessment of the credibility of the respective witnesses, this assessment is a disputed issue of fact that cannot be resolved on summary judgment") (cleaned up); see also Schoonejongen v. Curtis-Wright Corp., 143 F.3d 120, 130 (3d Cir. 1998); Spreen v. Brey, 961 F.2d 109, 111 (7th Cir. 1992).

To put it together:

The claim that the handbrake was defective in April 2019, when the Count One accident allegedly happened, depends entirely on the Plaintiff's account.  But the Plaintiff's credibility has been challenged --- and assessing that challenge, and her credibility more generally, is for the jury at trial, not for the Court on summary judgment.

Accordingly, the Plaintiff's motion as to Count One is denied.

*     *     *

Count Two steps off from the same legal theory as Count One --- that the Defendant's handbrake was defective, and that this violated the FSAA.

But there are differences between the counts.

Count One focuses on the April injury; as noted, it is based just on the Plaintiff's account.

Count Two is about an alleged May 31, 2019 injury.  <u>See</u> Motion for Partial Summary Judgement at 5.

Count Two rests on the Plaintiff's testimony, <u>see</u> Plaintiff's Statement of Material Facts ¶¶ 16-26 --- but also on an inspection report, among other things.  <u>See</u> <u>id</u>. at ¶¶ 27-34; Motion for Partial Summary Judgment, Exhibit E ("Inspection Report").

The inspection report concluded: "handbrake found defective." <u>See</u> Inspection Report at 1.

The report was prepared by an employee of the Defendant, who performed the inspection.  <u>See</u> Motion for Partial Summary Judgment, Exhibit D, Deposition of Mary McCoog at 18:5-19:13. The inspector was both trained and certified as a "car inspector."  <u>See</u> <u>id</u>. at 9:12-10:15.

As for its part, the Defendant does not appear to dispute any of this.  <u>See</u>, <u>e.g.</u>, Defendant, New Jersey Transit Rail Operation Inc.'s, Response in Opposition to Plaintiff's Partial Motion for Summary Judgment ("Responsive Statement of Facts") ¶ 31 (indicating "admitted" as to the Plaintiff's allegation that "McCoog inspected the handbrake on Car 7203 and found: (a) Handbrake found defective when applying it would release on its own; (b) when you pull on the handbrake arm, it should ratchet. It ra[t]cheted and then it would release.") (cleaned up).

All of this would seem to add up to the Defendant acceding to the Plaintiff's motion for partial summary judgment.  After all, the motion asks whether the undisputed evidence shows the handbrake was defective --- and the Defendant's inspector concluded it was.

But the Defendant opts for a different course.

It suggests the inspection evidence is insufficient, because it does not speak to the condition of the handbrake when it was used by the Plaintiff, but only to its condition when it was later tested.  <u>See</u> <u>id</u>. at ¶ 56; Memorandum of Law in Opposition at 6.

But this suggestion is not developed.  <u>See</u> Memorandum of Law in Opposition at 6.  It is based on no argumentation, and no citations to cases or the evidentiary record.  The Defendant instead seems to rely entirely on a quick phrase in its Responsive Statement of Fact and legal brief.

This is too little to go on.  The argument has been waived, and it will not be considered here.  _See_ _United States ex rel. Penelow_ v. _Janssen Prods. LP_, 2022 WL 94535, at *9 n.2 (D.N.J. Jan. 10, 2022) (declining to consider an argument that was not briefed clearly or effectively); _Read_ v. _Profeta_, 397 F. Supp. 3d 597, 633 n.27 (D.N.J. 2019) ("arguments raised in passing . . . are considered waived") (cleaned up); _Graceway Pharma., LLC_ v. _Perrigo Co._, 722 F. Supp. 2d 566, 571 (D.N.J. 2010) ("Arguments absent substantial development are waived."); _see_ _also_ _Masterank Wax, Inc._ v. _RFC Container, LLC_, 2023 WL 9055424, at *9 n.20 (D.N.J. Dec. 30, 2023) (argument is deemed abandoned when filing "merely regurgitates in a shotgun fashion a series of factual statements" without developing a legal argument); _Mantua Twp. Bd. Of Educ._ v. _E.K. on behalf of W.W._, 2023 WL 6389104, at *6 n.10 (D.N.J. Sept. 30, 2023) (argument is deemed abandoned when the party only offered "vague assertion[s], devoid of citations to any legal authority").

The Court holds: the Plaintiff is entitled to partial summary judgment on Count Two because the motion is well-grounded in the evidence --- and the Defendant has not pressed any meaningful counterargument.

                              *    *    *

That said, even if the Court were to consider the Defendant's apparent argument --- it would reject it.

To see why, note that the Plaintiff has plainly carried her initial burden here.

She has offered affirmative evidence that the handbrake was defective --- in particular, the Defendant's inspection.

And the Plaintiff has put forward telling evidence as to the timing and circumstances of the inspection.

Take timing first.

The handbrake inspection was done on the same day as the accident.  _See_ Inspection Report at 1.

And moreover: the inspection was apparently done in the hours just after the accident.  The accident took place in Great Notch, New Jersey, _see_ Motion for Partial Summary Judgment, Exhibit C ("Accident Report") at 1, and after the accident the train was taken to New York's Penn Station for the brake inspection.  _See_ Motion for Partial Summary Judgment, Exhibit F, Deposition of Lisa Bell at 13:4-9; 21:15-20; 25:11-16:2.  Great

7

Notch and New York Penn Station are about 16 miles apart,[5] and that is a short train ride.[6]

In addition, the Plaintiff reported she was injured at approximately 7:00am.  See Accident Report at 1.  The rail employee who stepped in after the accident, and took the Plaintiff's place for the trip to Penn Station, was already off work on the day in question by around 10:30am.  See Deposition of Lisa Bell at 13:4-9; 17:24-18:4; 21:15-20; 25:11-16.

In short: the evidence strongly suggests that no more than 3.5 hours elapsed (7:00am to 10:30am) between the alleged handbrake malfunction and the handbrake being in position for its post-injury inspection.

What happened during that time period?  Not much.  On the trip from Great Notch to New York, the rail employee who took the Plaintiff's place on the train testified that she did not use the handbrake in question.  See id. at 15:17-18.  Instead, she relied on the handbrakes on different cars.  See id. at 22:22-23:9.  (And this testimony is corroborated by testimony from another on-scene employee.  See Motion for Partial Summary Judgment, Exhibit K, Deposition of Richard Szymczak at 15:1-21.)

Bottom line: the Defendant's inspection showed the handbrake was defective, and the inspection was done relatively quickly --- and in circumstances that helped to ensure there could be little realistic likelihood of any difference between (a) the handbrake as it was when it was inspected and (b) the handbrake as it had been a bit earlier in the day, when the Plaintiff was allegedly hurt by it.

---

[5]  While there is no relevant evidence in the record, the Court takes judicial notice that the distance between Great Notch and New York Penn Station is around 16 miles.  See Deforte v. Borough of Worthington, 2023 WL 2726704, at *20 n.15 (W.D. Pa. Mar. 31, 2023) ("A court can take judicial notice of distances between places."); Bond v. Solvay Specialty Polymers, USA, LLC, 583 F. Supp. 3d 643, 646 n.3 (D.N.J. 2022) ("Courts may take judicial notice of the distance between two geographical locations."); Wyndham Hotels & Resorts, LLC v. Northstart Mt. Olive, LLC, 2015 WL 1004018, at *3 n.2 (D.N.J. Mar. 6, 2015) ("A court may take judicial notice of geographic distances.").

[6]  See, e.g., Gordon v. Lewistown Hosp., 272 F. Supp. 2d 393, 492, 492 n.34 (M.D. Pa. 2003) (taking judicial notice of the time it would take to drive between two locations).

When a party carries their burden with solid and undisputed evidence of this kind, and then moves for summary judgment --- the burden then shifts over to the non-moving party, here the Defendant.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) ("when a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial") (cleaned up); Wiest v. Tyco Elecs. Corp., 812 F.3d 319, 328 (3d Cir. 2016) ("If the moving party satisfies its burden, the burden then shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial.") (cleaned up) (emphasis added).[7]

But although it had the burden to "come forward with specific facts," Tyco Elecs. Corp., 812 F.3d at 328, the Defendant has not pointed the Court to any.

The Defendant offers no proof as to why its May 31 handbrake test does not establish that the handbrake was, in fact, defective on May 31.

For example, the Defendant does not point to any evidence that the handbrake was damaged or used or even touched in the (relatively short) interval between the brake injury and the brake inspection.  The Defendant makes no effort to put forth evidence that casts doubt on the qualifications or thoroughness of the employee who conducted the handbrake inspection.  And the Defendant alludes to no evidence of complicating circumstances --- nothing, for example, about unusual happenings on the trip from Great Notch to New York, or when the train pulled into Penn Station for a handbrake check.

---

[7]  For other cases along these lines, see: United States v. Donovan, 661 F.3d 174, 185 (3d Cir. 2011) (same); Player v. Motiva Enters., LLC, 240 F. App'x 513, 522 n.4 (3d Cir. 2007) ("If the moving party has satisfied its initial burden, the nonmoving party must, in their opposition to the motion, identify evidence of record that creates a genuine issue of material fact.") (cleaned up) (emphasis added); Lexington Ins. Co. v. W. Pa. Hosp., 423 F.3d 318, 322 n.2 (3d Cir. 2005) ("Once the moving party has met this burden, . . . the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.").

At this stage, after discovery has come and gone, the needle
cannot be moved by bare assertions.  A skeptical question in a
legal brief --- maybe the May 31 inspection was not clarifying?
--- does not do enough.  <u>Evidence</u> that the May 31 inspection was
not clarifying might change the picture.  But none has been
offered.

The undisputed evidence here is that the Defendant's May 31
inspection established that the handbrake was defective.  The
Defendant has put no proof on the other side of the ledger.  In
this circumstance, no reasonable jury could find for the
Defendant.  <u>See</u> <u>Scott</u> v. <u>Harris</u>, 550 U.S. 372, 380, 386 (2007)
(holding the Defendant was entitled to summary judgment because
"no reasonable jury could conclude otherwise"); <u>Anderson</u>, 447
U.S. at 248 (summary judgment should be granted when "there is
no genuine issue as to any material fact" and a dispute is
genuine only if "the evidence is such that a reasonable jury
could return a verdict for the nonmoving party"); <u>accord</u>, <u>e.g.</u>,
<u>Prall</u> v. <u>Bochini</u>, 2016 WL 3457151, at *5 (D.N.J. June 23, 2016).

The Plaintiff's partial summary judgment motion at to Count Two
is granted. [8]

* * *

The motion for partial summary judgment is denied as to Count
One, and granted as to Count Two.[9]

_____

[8]  In reaching this conclusion, the Court, as noted, focuses
wholly on the undisputed evidence as to the May 2019 handbrake
inspection.  Therefore, the Court does not rest in any way on
the Plaintiff's testimony as to handbrake defects, because the
credibility of the Plaintiff's testimony has been challenged, at
least as a general matter.

[9]  Two points.  <u>First</u>, the Plaintiff argues that if a violation
of the FSAA is established, the Court should also grant summary
judgment on her request to exclude evidence of contributory
negligence.  <u>See</u> Motion for Partial Summary Judgment at 1.  But
limits on what evidence can be presented to the jury are
appropriately addressed just before trial, via a motion in
limine.  <u>Second</u>, and as noted above, the Plaintiff has moved for
summary judgment only as to a violation of the FSAA, and not as
to causation or the Defendant's ultimate liability under the
FELA.

IT IS on this 28th day of June, 2024, so **ORDERED.**

Michael E. Farbiarz, U.S.D.J.